**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DENNIS NAZELLI and
ARNOLD BALL,

        Plaintiffs,

CASE NO. 07-14254
HON. LAWRENCE P. ZATKOFF

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL UNION NO. 372,

        Defendant.
_____/

## **OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 12, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### **I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction (Dkt. #2). Defendant has filed its response to this motion and has also filed a Motion to Dismiss (Dkt. #6). Plaintiff has since replied. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion is GRANTED.

### **II. BACKGROUND**

Plaintiffs are members in good standing of Defendant International Brotherhood of Teamsters, Local No. 372 (Defendant). Defendant is a local labor organization and is affiliated with

the International Brotherhood of Teamsters (IBT). Until October 2005, Plaintiff Dennis Nazelli (Nazelli) was employed as a district manager with the Detroit Newspaper Agency. Plaintiff Arnold Ball (Ball) is currently a district manager. Between January 2002 and February 2005, Nazelli served as Defendant's Secretary-Treasurer, which duties he performed while on a union leave of absence from his district manager position. Nazelli returned to his district manager position in March 2005.

Following his return to employment as a district manager, Nazelli was repeatedly disciplined for insubordination, which eventually led to his discharge in October 2005. Nazelli challenged his dismissal through Defendant's grievance procedures as well as before the National Labor Relations Board (NLRB). On August 10, 2006, an arbitrator upheld Nazelli's discharge. Although the NLRB declined to defer to the arbitrator's ruling, it also dismissed Nazelli's claim on June 29, 2007. Nazelli's appeal from the NLRB's decision is pending. Although he had been discharged, Nazelli continued tendering his union dues, which Defendant has returned, and continued to seek employment within Defendant's jurisdiction.

In the meantime, on March 21, 2007, Defendant, pursuant to the IBT Constitution, issued Nazelli a withdrawal card because he had not been employed by a bargaining unit within its jurisdiction for a period of six months. Article XVIII, Section 6(a) of the IBT Constitution states:

> When a member becomes unemployed in the jurisdiction of the Local Union, he shall be issued an honorable withdrawal card upon his request. If no request is made, an honorable withdrawal card must be issued six (6) months after the month in which the member first becomes unemployed, if he is still unemployed at that time.

Additionally, Article II, Section 4(a)(1) of the IBT Constitution provides that in order

> [t]o be eligible for election to any office in a Local Union, a member must be in continuous good standing in the Local Union in which he is a member and in which he is seeking office, and actively employed at the craft within the jurisdiction of such Local Union, for a period of twenty-four (24) consecutive months prior to the month of nomination for said office .... "Continuous good standing" means ... no

2

> interruptions in active membership in the Local Union for which office is sought because of suspensions, expulsions, withdrawals, transfers or failure to pay fines or assessments.

As a consequence of Defendant's issuance of the withdrawal, Nazelli became ineligible to run for any local union office.

On October 7, 2007, Defendant held a nomination meeting in order to nominate candidates for its upcoming officer election scheduled to take place in October and November 2007. Ballots are scheduled to be mailed on or after October 17, 2007, and counted on November 7, 2007. Because he has been declared ineligible, Nazelli will not be able to include his name on the upcoming ballots, preventing those who support him, like Ball, from voting for him. Plaintiffs have filed the current suit seeking an injunction preventing Defendant from printing the election ballots without including Nazelli as a candidate. Defendant opposes Plaintiffs' motion and has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

### III. LEGAL STANDARD

A motion challenging the basis for the Court's subject matter jurisdiction is brought under Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1) ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). A Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiffs' claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiffs' favor.

3

*Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992).

## IV. ANALYSIS

Plaintiffs' complaint is brought pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401 et seq. Defendant moves to dismiss Plaintiffs' complaint, arguing that Plaintiffs' claims are governed by Title IV of the LMRDA and as such must be brought by the Secretary of Labor following the administrative and judicial procedures set forth in 29 U.S.C. § 483. Thus, Defendant contends that the Court lacks subject matter jurisdiction over Plaintiffs' claims. Furthermore, Defendant argues that Plaintiffs have failed to state a claim upon which relief can be granted under Title I of the LMRDA because Plaintiffs have not pled that they were treated unequally with respect to nominating candidates for union office or voting during elections. The issue before the Court is whether Plaintiffs' claims for relief arise, in whole or in part, under Title I or Title IV of the LMRDA.

Title I of the LMRDA protects union members against discriminatory application of union rules by guaranteeing that "[e]very member of a labor organization shall have equal rights and privileges within such organization to nominate candidates [and] to vote in elections or referendums of the labor organization ... subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). To enforce this guarantee, Title I provides a cause of action to any person whose rights secured by Title I have been violated. *See* 29 U.S.C. § 412. Further, the district courts are permitted to grant "such relief (including injunctions) as may be appropriate." *Id.* Jurisdiction under Title I "depends entirely upon whether [Plaintiffs'] complaint show[s] a violation of rights guaranteed by [29 U.S.C. § 411]." *Calhoon v. Harvey*, 379 U.S. 134, 147 (1964).

In contrast, Title IV of the LMRDA attempts "to guarantee fair union elections in which all the members are allowed to participate." *Calhoon*, 379 U.S. at 140. That Title states:

> In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) ....

29 U.S.C. § 481(e). Title IV secures these rights by setting up an "exclusive method ... permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violation of Title IV." *Calhoon*, 379 U.S. at 140. "Upon complaint the Secretary investigates and if he finds probable cause to believe that Title IV has been violated, he may file suit in the appropriate district court." *Id.* As such, "the [LMRDA] itself shows clearly by its structure and language that ... disputes ... relating ... to [the] eligibility of candidates for office, fall squarely within Title IV of the [LMRDA] and are to be resolved by the administrative and judicial procedures set out in that Title." *Id.* at 141.

The Supreme Court addressed a situation similar to that in the present case in *Calhoon*, where union members argued that they had been deprived of their Title I rights based on the defendant's restrictive eligibility requirements. The Court described the plaintiffs' claim as "an attempt to sweep into the ambit of their right to sue in federal court if they are denied an equal opportunity to nominate candidates under [29 U.S.C. § 411(a)(1)], a right to sue if they are not allowed to nominate anyone they choose regardless of his eligibility and qualifications under union restrictions." *Calhoon*, 379 U.S. at 138. Recognizing that Title I provided "no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote," *id.* at 139, the Court stated that "the equal-rights language of [§ 411(a)(1)]

5

would have to be stretched far beyond its normal meaning to hold that it guarantees members not just a right to 'nominate candidates,' but a right to nominate anyone, without regard to valid union rules," *id.* at 138. Although the plaintiffs' request to nominate candidates had been denied, the Court reasoned that their Title I rights had not been violated because "that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members." *Id* at 139. The Court went on to state that "[w]hether the eligibility requirements set by the union's constitution and bylaws were reasonable and valid is a question separate and distinct from whether the right to nominate on an equal basis given by [§ 411(a)(1)] was violated," and held that "possible violations of Title IV ... regarding eligibility are not relevant in determining whether or not a district court has jurisdiction under ... Title I ...." *Id.* at 139-140.

Following the reasoning in *Calhoon*, the court in *Fisher v. Washington Teachers' Union*, 350 F. Supp. 2d 69 (D.D.C. 2004), found that the plaintiff raised challenges to both the defendant's eligibility requirements and to the unequal application of those requirements. The plaintiff in *Fisher* argued that the defendant misinterpreted its constitution and bylaws to declare him ineligible to run for union office. *Id.* at 76. Following *Calhoon*, the court held that this claim arose under Title IV of the LMRDA, depriving it of subject matter jurisdiction. *Id.* In contrast, the court found that to the extent the plaintiff claimed an unequal application of the eligibility rules, his claim arose under Title I and subject matter jurisdiction existed. *Id.*

Notwithstanding the existence of jurisdiction, the *Fisher* court dismissed the plaintiff's Title I claim, concluding that the plaintiff had not shown that he and the person receiving the beneficial treatment were similarly situated, which prevented him from demonstrating unequal treatment. The court summarized the relevant facts as follows:

6

> Until 1998, Plaintiff Fisher was employed by the Board of Education as a classroom teacher, attendance officer and counselor. ... As a result of a reduction in force in 1998, Plaintiff Fisher was separated from his employment with the Board of Education, and does not have a right to reinstatement to a position with the Board of Education. Plaintiff Fisher was a member of the Washington Teachers Union during his employment, and maintained his membership with the WTU, even after he was no longer employed by the Board of Education.
>
> Rachel Hicks is not presently employed as a teacher with the district of Columbia Public Schools. Rather she is a permanent teacher who has taken a leave of absence from the school system while she works as a member of WTU's staff. The WTU's Collective Bargaining Agreement permits a permanent teacher who takes a leave of absence to work with the WTU, to retain his or her right to reinstatement as a teacher in the District of Columbia Public School System.

*Id.* at 77 (internal citations omitted). Noting that Hicks, unlike the plaintiff, maintained an employment relationship with the Board of Education, and that Hicks' candidacy, unlike the plaintiff's, was specifically permitted by a provision in the union constitution, the court found that the two were not similarly situated for purposes of Title I. *Id.* at 78-79. As such, the court concluded that the plaintiff could not show that he had been treated unequally in violation of rights provided by Title I. *Id.* at 79.

Much like the plaintiff in *Fisher*, Plaintiffs appear to bring both a Title IV claim and a Title I claim: Plaintiffs allege that Defendant misapplied or misinterpreted its eligibility requirements (the Title IV claim) and also applied them unequally (the Title I claim). The majority of Plaintiffs' allegations deal with Nazelli's eligibility to run in the upcoming election. Moreover, Plaintiffs have requested the Court to declare Nazelli to be an eligible candidate and to order that his name be placed on the ballots. Based on the Supreme Court's holding in *Calhoon*, the Court finds that this claim clearly involves rights secured by Title IV of the LMRDA and must be brought according to the procedures set forth therein. As Plaintiffs have not followed those procedures, the Court lacks subject matter jurisdiction over Plaintiffs' claim to the extent it seeks a determination of Nazelli's

eligibility to run for office. Furthermore, despite Plaintiffs' arguments to the contrary, it is irrelevant to this case whether Plaintiffs have sought relief prior to the election where the substantive issue is governed by Title IV and not Title I. Therefore, Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) must be granted as to Plaintiffs' Title IV claim.

In order to go forward despite Title IV, Plaintiffs argue pursuant to Title I that Defendant's determination that Nazelli was ineligible deprived Ball of his right to nominate and vote for a candidate of his choice. Yet Plaintiffs complaint merely alleges that Nazelli has been declared ineligible to run in the upcoming election and, therefore, Ball cannot nominate or vote for the candidate he supports. However, nowhere do Plaintiffs allege that either of them have been treated unequally. *See Calhoon,* 379 U.S. at 139 (stating that Title I is "no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote"); *Members for a Better Union v. Benova*, 152 F.3d 58, 65 (2d Cir. 1998) (concluding that Title I "curbs no abuse other than *discrimination* against some union members and in favor of others with respect to voting rights .... To be viable, a claim ... must therefore allege denial of some privilege or right to vote which the union has granted to others"). As the Supreme Court stated in *Calhoon*, Title I does not provide Plaintiffs with the right to nominate and vote for anyone they wish. Rather, the holding in *Calhoon* made clear that in order to bring the case within the Court's Title I jurisdiction, Plaintiffs' complaint must allege facts indicating that they have been treated unequally. This they have failed to do.

Plaintiffs allege that Ball has been denied his equal right to nominate candidates and vote because Nazelli has been declared ineligible. Similar to *Calhoon*, however, Plaintiffs have not alleged that Ball has been denied a right that has been granted to others. Plaintiffs' complaint does

not allege that other union members were permitted to nominate or vote for candidates who have been declared ineligible or that Defendant has applied its eligibility rules unequally with respect to the upcoming election. Plaintiffs' claim is essentially that Ball was treated differently because he could not nominate and vote for Nazelli whereas other members could nominate and vote for who they wanted. This is nothing more than an "attempt to sweep into the ambit of their right to sue in federal court if they are denied an equal opportunity to nominate candidates under [29 U.S.C. § 411(a)(1)], a right to sue if they are not allowed to nominate anyone they choose regardless of his eligibility and qualifications under union restrictions." *Calhoon*, 379 U.S. at 138.

In support of their arguments, Plaintiffs have supplied an affidavit from Jeff Duncan, a member of another Local Union, which states that he was permitted to run for union office even though he, like Nazelli, had been unemployed for over six months. It is apparent that in providing this affidavit Plaintiffs, like the plaintiff in *Fisher*, are attempting to claim that Nazelli is similarly situated to Duncan and, thus, Defendant applied its eligibility requirements unequally. Although the affidavit is not expressly incorporated into Plaintiffs' pleadings, the parties have treated it as though it was, and it is central to Plaintiffs' claims. Accordingly, for purposes of this motion, the Court will consider the affidavit as if it were expressly incorporated into Plaintiffs' complaint. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *Cortec Indus., v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Even accepting Duncan's statements as true, Plaintiffs' Title I claim is still deficient. Much like the court found in *Fisher*, Duncan is not similarly situated to Nazelli for purposes of Title I. Beyond the fact that both Nazelli and Duncan were unemployed for over six months, there is no indication that the difference in treatment would violate Title I: (1) Duncan is not, and has never

9

been, a member of Nazelli's local union; (2) unlike Nazelli, Duncan's candidacy related to a 2004 election rather than the election taking place in 2007; (3) unlike Nazelli, Duncan is not seeking to participate in the current election; (4) unlike Nazelli, Duncan's local union did not issue him a withdrawal card and did not return his tendered dues; and (5) unlike Nazelli, the decision to permit Duncan to run for office was not made by Defendant, but by the IBT, which is not a party to this case. Thus, even though Plaintiffs' requests to nominate and vote for Nazelli have been denied, "that denial was not a discrimination against their right to nominate [or vote], since the same qualifications were required equally of all members." *Calhoon*, 379 U.S. at 139. Accordingly, Plaintiffs have not stated a claim upon which relief can be granted and Defendant's motion under Fed. R. Civ. P. 12(b)(6) must be granted as to Plaintiffs' Title I claim.

## V. CONCLUSION

The Court concludes that it lacks subject matter jurisdiction over this case to the extent that Plaintiffs' claims seek relief exclusively provided by Title IV of the LMRDA. Furthermore, the Court finds that Plaintiffs have failed to state a claim under Title I of the LMRDA. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED and Plaintiffs' complaint is HEREBY DISMISSED.

IT IS SO ORDERED.

_____s/Lawrence P. Zatkoff_____
LAWRENCE P. ZATKOFF
Dated: October 12, 2007　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager